No. 24-_____

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

MARIE FALCONE, *individually and
on behalf of all others similarly situated*,

*Plaintiff-Respondent,*

v.

NESTLÉ USA, INC. *a Delaware corporation*,

*Defendant-Petitioner.*

_____

On Petition for Permission to Appeal from the
U.S. District Court for the Southern District of California
Case No. 3:19-cv-723 | Hon. M. James Lorenz

_____

## PETITION FOR PERMISSION TO APPEAL
## UNDER RULE 23(f)

_____

Theodore J. Boutrous Jr.
Christopher Chorba
Perlette Jura
Timothy W. Loose
Bradley J. Hamburger
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7000

Al Kelly
GIBSON, DUNN & CRUTCHER LLP
1801 California St. #4200
Denver, Colorado 80202
(303) 298-5700

*Counsel for Petitioner Nestlé USA Inc.*

## CORPORATE DISCLOSURE STATEMENT

Under Federal Rule of Appellate Procedure 26.1, petitioner Nestlé USA, Inc. is a wholly owned corporate subsidiary of Nestlé Holdings, Inc. In turn, Nestlé Holdings, Inc. is a wholly owned corporate subsidiary of NIMCO US, Inc., which is a wholly owned corporate subsidiary of Nestlé US Holdco, Inc. Nestlé US Holdco, Inc. is a wholly owned corporate subsidiary of Société des Produits Nestlé S.A. Société des Produits Nestlé S.A. is a wholly owned corporate subsidiary of Nestlé S.A. Nestlé S.A. is a publicly traded Swiss corporation, the shares of which are traded in the United States in the form of American Depositary Receipts. No publicly held corporation currently owns 10% or more of the stock of Nestlé S.A.

Dated: October 10, 2024      Respectfully submitted,

*/s/ Theodore J. Boutrous Jr.*
Theodore J. Boutrous Jr.

*Counsel for Petitioner*
*Nestlé USA Inc.*

i

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................ 1

RELIEF SOUGHT ............................................................................. 5

JURISDICTIONAL STATEMENT ................................................... 5

QUESTIONS PRESENTED ............................................................. 5

BACKGROUND ................................................................................ 6

STANDARD OF REVIEW ............................................................... 11

REASONS FOR GRANTING REVIEW ......................................... 11

I. The Court Should Grant Review to Address the Propriety of "Full Refund" Damages Models in a Published Opinion. ...... 11

II. The District Court Manifestly Erred in Certifying a Consumer-Deception Class When the Evidence Demonstrates That Most Consumers Did Not See the Allegedly Deceptive Representations. ................................................................... 19

III. The District Court Manifestly Erred in Holding That a Plaintiff Has Standing to Seek Injunctive Relief to Change Labels She Does Not Want Changed and Is No Longer Deceived By. ...................................................................... 25

CONCLUSION ................................................................................ 30

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Animal Legal Def. Fund, Inc. v. Vilsack*,
    111 F.4th 1219 (D.C. Cir. 2024) ................................................. 28

*Avritt v. Reliastar Life Insurance Co.*,
    615 F.3d 1023 (8th Cir. 2010) .................................................... 24

*Berger v. Home Depot USA, Inc.*,
    741 F.3d 1061 (9th Cir. 2014) .................................................... 23

*Brazil v. Dole Packaged Foods, LLC*,
    660 Fed. App'x. 531 (9th Cir. 2016) .........................................3, 17

*Caldwell v. Nordic Nats., Inc.*,
    709 F. Supp. 3d 889 (N.D. Cal. 2024) ....................................... 29

*Capaci v. Sports Rsch. Corp.*,
    2022 WL 1133818 (C.D. Cal. Apr. 14, 2022) ............................ 17

*Castillo v. Bank of Am., NA*,
    980 F.3d 723 (9th Cir. 2020) ..................................................20, 25

*Chamberlan v. Ford Motor Co.*,
    402 F.3d 952 (9th Cir. 2005) ...................................................... 11

*Chowning v. Kohl's Department Stores, Inc.*,
    733 Fed. App'x. 404 (9th Cir. 2018) .........................................3, 17

*Cimoli v. Alacer Corp.*,
    546 F. Supp. 3d 897 (N.D. Cal. 2021) ....................................... 29

*Cohen v. DIRECTV, Inc.*,
    178 Cal. App. 4th 966 (2009) ..................................................... 22

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ............................................................3, 12, 13

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018) ..................................................25, 29

*Downey v. Public Storage, Inc.*,
    44 Cal. App. 5th 1103 (2020) ..................................................... 22

# TABLE OF AUTHORITIES
*(continued)*

Page(s)

*DZ Rsrv. v. Meta Platforms, Inc.*,
  96 F.4th 1223 (9th Cir. 2024) ...............................................19, 20

*Kwikset Corp. v. Superior Court*
  51 Cal.4th 310 (Cal. 2011) .......................................... 18

*Lambert v. Nutraceutical Corp.*,
  870 F.3d 1170 (9th Cir. 2017) .................................14, 15

*Lara v. First Nat'l Ins. Co. of Am.*,
  25 F.4th 1134 (9th Cir. 2022) ..................................... 12

*Leyva v. Medline Industries Inc.*,
  716 F.3d 510 (9th Cir. 2013) ....................................12, 13

*M.S. v. Brown*,
  902 F.3d 1076 (9th Cir. 2018) .................................... 28

*Moore v. Mars Petcare US, Inc.*,
  966 F.3d 1007 (9th Cir. 2020) .................................... 21

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) ....................................23, 24

*Prescott v. Nestle USA, Inc.*,
  2020 WL 3035798 (N.D. Cal. June 4, 2020) .............................. 27

*In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869*,
  725 F.3d 244 (D.C. Cir. 2013) ...................................... 13

*Reitman v. Champion Petfoods USA, Inc.*,
  830 Fed. App'x. 880 (9th Cir. 2020) ........................................3, 16

*Robinson v. OnStar, LLC*,
  2020 WL 364221 (S.D. Cal. Jan. 22, 2020) ................................ 16

*In re Tobacco Cases II*,
  240 Cal. App. 4th 779 (2015) .................................... 18

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ........................................23, 24

## Statutes

28 U.S.C. § 1292 ..................................................... 5

## TABLE OF AUTHORITIES
*(continued)*

Page(s)

Cal. Bus. & Prof. Code § 17200 ......................................................... 8

Cal. Civ. Code § 1750 ........................................................................ 8

### Rules

Fed. R. Civ. P. 23(f) .......................................................................... 5

## INTRODUCTION

The district court certified a class based on the remarkable allegation that *all* consumers would deem Nestlé USA chocolate products to be entirely "worthless"—and thus entitled to a full refund—if they do not align with Plaintiff Marie Falcone's interpretation of what it means to be "responsibly sourced." This is just one of multiple errors that led to the certification of a class of millions of consumers based on back-label representations that the evidence shows most consumers never even saw. This Court should grant review under Rule 23(f) to provide much-needed guidance in product-labeling cases like this.

Nestlé USA sells a variety of chocolate products, some of which say things like "responsibly sourced cocoa through the Nestlé Cocoa Plan" or "supporting farmers for better chocolate" in small font on the back of the products. Falcone alleges consumers would interpret the labels as promising "child labor free cocoa"—notwithstanding the fact that the labels do not mention child labor. Dkt. 78 ¶ 48. And Falcone further alleges "[n]o company[y]" can deliver what she thinks of as "sustainable cocoa" because—even though the Nestlé Cocoa Plan

spends hundreds of millions of dollars to fight the risk of child labor, is lauded by nonprofits working in this area, and is certified by Rainforest Alliance—systemic issues on third-party farms in West Africa are allegedly too "widespread" for anyone to fix. *Id.* ¶ 53.

In opposing class certification, Nestlé USA presented extensive evidence, including expert testimony, showing that (1) most consumers never saw the statements at issue in this case; (2) almost no consumers interpreted the labels as making any promises about child labor; and (3) the challenged statements had no effect on consumers' willingness to buy the products. In fact, Falcone herself testified that she had "no problems" with the current product labels, which say "responsibly sourced cocoa through the Nestlé Cocoa Plan" on the back panel. When shown those current labels in her deposition, Falcone testified they were "perfect" and that she was "going to go buy them."

The district court nonetheless certified damages and injunctive-relief classes covering millions of consumers who bought Nestlé USA chocolate products in California over a nine-year period. Three aspects of the court's ruling call out for immediate review.

*First*, Falcone relies on a "full refund" damages model premised on the allegation that *all* consumers would think chocolate is entirely "worthless" if it does not match her definition of "responsibly sourced." Order 21–23. Yet the court declined to scrutinize whether such a model could appropriately measure damages in a case like this, where the evidence shows that most consumers got value from the products or did not care about the challenged statements. Instead, the court considered whether a "full refund" approach was appropriate to be a "merits issue not decided at class certification." *Id.* at 23. That ruling is manifestly erroneous. As the Supreme Court made clear in *Comcast Corp. v. Behrend*, 569 U.S. 27, 35–36 (2013), dismissing challenges to the propriety of a damages model as going to the "merits" would lead courts to accept "arbitrary . . . measurements" of classwide damages. And this error is particularly significant because, in at least three unpublished opinions, this Court has rejected the use of "full refund"

models.[1]  This case illustrates the need for this Court to address this critical, recurring issue in a published opinion.

*Second*, the district court discounted evidence showing that many consumers never saw the challenged representations, holding instead that "all class members *by definition* received the representations" simply because those representations were placed somewhere on the product.  Order 20 (emphasis added).  That blanket rule directly contradicts decisions of this Court and California state courts that focus on whether class members *actually saw* the challenged representations—not just whether they might have theoretically seen them.  Moreover, the ruling conflicts with Article III, as it certifies a class full of members who never saw the challenged representations, and thus could not have suffered any actual injury.

*Third*, the court held Falcone has standing to serve as class representative and seek injunctive relief based on her allegation that she "stopped purchasing [Nestlé USA's products] because she can no

---

[1] *See Reitman v. Champion Petfoods USA, Inc.*, 830 Fed. App'x. 880 (9th Cir. 2020); *Chowning v. Kohl's Department Stores, Inc.*, 733 Fed. App'x. 404 (9th Cir. 2018); *Brazil v. Dole Packaged Foods, LLC*, 660 Fed. App'x. 531 (9th Cir. 2016).

longer rely on" the labeling.  Order 6, 24.  But that conclusion cannot be squared with Falcone's testimony that the labels she is seeking to change are already "perfect."  Moreover, even if Falcone was deceived in the past, she now knows exactly where to find out about Nestlé USA's cocoa sourcing:  the same web pages cited in her complaint.  She thus cannot be "deceived" in the future, and has no standing to seek injunctive relief.

## RELIEF SOUGHT

The Court should grant Rule 23(f) review and reverse the class-certification order.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction under 28 U.S.C. § 1292(e) and Federal Rule of Civil Procedure 23(f).  The district court granted class certification on September 26, 2024.  Dkt. 168.

## QUESTIONS PRESENTED

**1.**  Did the district court err in certifying a Rule 23(b)(3) class under a "full refund" damages model that assumed chocolate is "worthless" for all consumers unless it is "responsibly sourced" according to the named Plaintiff's definition of that term?

5

**2.** Did the district court err in concluding that predominance was satisfied because "all class members by definition received the representations," even if evidence shows consumers did not see them?

**3.** Does a plaintiff have standing and the ability to represent a class seeking injunctive relief to force a change in product labels when she has admitted that she has no problem with the current labels and knows where to where to obtain information that would cure any possible deception?

## BACKGROUND

**1.** Nestlé USA sells chocolate products through several brands, including Toll House chocolate chips, Nestlé hot cocoa mix, and Nesquik. Dkt. 132 at 2. The cocoa used in these products is sourced through the "Nestlé Cocoa Plan," a program that has directed hundreds of millions of dollars to improving farming conditions, fighting against the risk of child labor, and combatting deforestation. *Id.* at 3. The program has been lauded by third-party organizations, who rank Nestlé as one of the top two companies in the world for combatting the risk of child labor in the cocoa supply chain. *Id.* at 6–7.

6

This case involves 59 different Nestlé USA product labels featuring varying, mostly back-label representations about the Nestlé Cocoa Plan, such as:

- "Supporting farmers for better chocolate. The Nestlé Cocoa Plan works to help improve the lives of cocoa farmers and the quality of their products. www.nestlecocoaplan.com."

- "Responsibly sourced cocoa through the Nestlé Cocoa Plan. www.nestlecocoaplan.com."

- "Our sustainably sourced cocoa beans produce a smooth and delicious hot cocoa ready in seconds."

- "Our signature chocolate taste comes from sustainably harvested cocoa beans."

Dkt. 132 at 3–5. Some of the labels also featured emblems indicating certification from Rainforest Alliance. *Id.* It is undisputed that Nestlé USA holds a valid certification from Rainforest Alliance. *Id.* at 9.

**2.** Plaintiff Marie Falcone's complaint alleges that Nestlé USA's representations about the Nestlé Cocoa Plan are misleading because consumers supposedly view those representations as promising "child labor free cocoa." Dkt. 78 ¶ 48. The complaint alleges that "*[n]o*

7

*companies*, including Nestlé, can claim to be sourcing sustainable cocoa" because cocoa often comes from parts of West Africa where child labor is "a common and widespread practice." *Id.* ¶ 53. Based on these allegations, the complaint raises claims under California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200. Dkt. 78 ¶¶ 104–135.

At her deposition, Falcone testified that she thinks companies can make "sustainably sourced" cocoa statements so long as they do "due diligence" and "follow the guidelines" put forward by the Rainforest Alliance—which Nestlé USA does. Dkt. 132-1 at 40–41. Likewise, Falcone said she would "absolutely" buy Nestlé USA products in the future if only more Nestlé Cocoa Plan reports were published after 2019—which they have been, every year. *Id.* at 23–34, 36, 60, 68. When shown those reports, Falcone agreed Nestlé USA is "putting their money where their mouth is" and "is delivering" on the statements made on product labels. *Id.* at 63, 67–68. And when Falcone was presented with the current versions of the same product labels she challenges in this case, she said the labels are "perfect" and

8

told Nestlé USA's representative at the deposition: "put them for sale, and I'm going to go buy them." *Id.* at 53–56.

**3.** Despite Falcone's professed satisfaction with both the Nestlé Cocoa Plan's work and the current product labels, she nonetheless sought certification of both damages and injunctive-relief classes made up of California consumers who bought the challenged products from April 2015 to present. Dkt. 125. These classes encompass millions of consumers. *See* Dkt. 132-2 at 153 ("78.48 million Americans used Nestlé Toll House Morsels in 2020" alone).

Falcone's motion was not supported by any expert surveys or reports on consumer perception, materiality, or damages. Instead, Falcone argued that materiality could be established on a classwide basis because some internal Nestlé USA documents indicated that some employees thought "sustainability" was an important topic for consumers. Dkt. 125-1 at 11–12. Falcone further argued there was no need to provide an expert damages model because "the Products are worthless" and a "full refund" is owed to all consumers. *Id.* at 28.

In opposition, Nestlé USA submitted an expert report, as well as internal studies conducted before the litigation, showing that most

9

consumers never saw the challenged representations on the product labels; that consumers did not interpret those labels as referring to child labor; and that the challenged representations did not affect the likelihood that consumers would buy the products or the price they were willing to pay. *See* Dkt. 132-2; Dkt. 132 at 14–27.

**4.** The trial court certified both damages and injunctive-relief classes. The court ruled that Falcone can rely on a "full refund theory" because she has alleged the products "are worthless," and the question whether a full-refund damages theory is appropriate here is "a merits issue not decided at class certification." Order 22–23.

The court likewise held Falcone can satisfy the requirement for classwide exposure to the challenge representations because "all class members by definition received the representations," simply because those representations were placed somewhere on the product label. Order 20.

Finally, the court determined Falcone has standing to seek injunctive relief, notwithstanding specific admissions that she is satisfied with the current labels and Nestlé Cocoa Plan's efforts,

because Falcone testified that she stopped buying Nestlé USA products but would like to buy them again in the future.  Order 5–6.

## STANDARD OF REVIEW

Rule 23(f) review is warranted when a class-certification decision "is manifestly erroneous" or "presents an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally, that is likely to evade end-of-the-case review." *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005).

## REASONS FOR GRANTING REVIEW

**I.      The Court Should Grant Review to Address the Propriety of "Full Refund" Damages Models in a Published Opinion.**

Falcone contends that all California consumers would have thought numerous different Nestlé USA chocolate products bought and enjoyed over almost a decade were entirely "worthless" if they fell short of her expectations of back-label representations about "supporting farmers" or being "responsibly sourced."  Order 21–22, 25.  The district court relied on this "full refund" theory even though Falcone presented no evidence that *any* class members (including herself) would have deemed the products worthless.  Instead of scrutinizing the propriety

of a "full refund" damages model, the district court dismissed challenges to it as going solely to the "merits"—in obvious conflict with the Supreme Court's ruling in *Comcast*. As a result, the court accepted a "full refund" theory that this Court has rejected in unpublished decisions. This Court should grant review to resolve this issue in a published opinion.

**1.** The district court violated *Comcast* because the certification order does not establish that "full refund" damages are "capable of measurement on a classwide basis." 569 U.S. at 34.

Even if Falcone could demonstrate that Nestlé USA's products were worthless for some segment of consumers who exclusively care about chocolate sourcing when buying chocolate, figuring out *who* cares about chocolate sourcing—and whether they care to the exclusion of other factors like taste, brand familiarity, or price—would require individualized analysis for millions of consumers. That individualized analysis "will inevitably overwhelm questions common to the class." *Comcast*, 569 U.S. at 34; *see also Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134, 1139 (9th Cir. 2022) (holding that a class cannot be

12

certified if "figuring out whether each individual putative class member was harmed would involve an inquiry specific to that person").

In holding otherwise, the district court cited *Leyva v. Medline Industries Inc.*, 716 F.3d 510 (9th Cir. 2013), for the notion that "calculation of individual damages alone cannot defeat class certification." Order 23. But *Leyva* is distinguishable: There, the plaintiffs offered a method to calculate damages on a classwide basis (based on the wages of each class member) and the Court determined that the varying "amount of pay" resulting from this model, alone, could not preclude certification. *Leyva*, 716 F.3d at 513–14. That is worlds apart from the situation here, where this is no viable classwide damages model *at all*.

The district court further contradicted *Comcast* in concluding that "[w]hether the products are worthless . . . is a merits issue not decided at class certification." Order 23. Declining to scrutinize the propriety of a proposed damages model because it supposedly goes to the "merits" is the *exact* approach to class certification that the Supreme Court rejected in *Comcast*. There, the Third Circuit had held that scrutinizing a damages model "would involve consideration of the

13

'merits' having 'no place in the class certification inquiry.'" *Comcast*, 569 U.S. at 35. But that "reasoning flatly contradicts [Supreme Court] cases requiring a determination that Rule 23 is satisfied, even when that requires inquiry into the merits of the claim." *Id.* And if this approach were to be adopted—as it was in this case—it will lead courts to accept damages models that are "arbitrary" and the "predominance requirement" would be "reduced . . . to a nullity." *Id.* at 36; *see also In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869*, 725 F.3d 244, 253 (D.C. Cir. 2013) ("No damages model, no predominance, no class certification."). Declining to assess the propriety of a "full refund" damages model by reasoning that was a "merits" issue was thus manifestly erroneous.

**2.** The district court's acceptance of a "full refund" model on the facts is also contrary to multiple unpublished decisions from this Court, as well as the approach taken by California appellate courts.

The district court primarily relied on a non-precedential vacated decision—*Lambert v. Nutraceutical Corp.*, 870 F.3d 1170 (9th Cir. 2017), *vacated by Nutraceutical Corp. v. Lambert*, 586 U.S. 188 (2019)—to conclude that "[i]t is possible to recover a full refund . . . if

14

'a product is shown to be worthless,' or has 'only de minimis value.'" Order 21 (quoting *Lambert*, 870 F.3d at 1174). To the extent *Lambert* still has persuasive value, it is entirely distinguishable. The plaintiff in *Lambert* challenged a product called "Cobra Sexual Energy," which was a sham aphrodisiac that "the Food and Drug Administration . . . has not approved." 870 F.3d at 1173. The plaintiff "presented evidence that the product at issue was valueless" because it provided none of the promised benefits of enhanced sexual performance. *Id.* at 1183. Given this evidence, the Court reasoned that a "full refund model [was] consistent with Lambert's theory of liability," and therefore could serve as a classwide method for measuring damages. *Id.*

That reasoning has no application here. Unlike the plaintiff in *Lambert*, Falcone offered no evidence that chocolate products were worthless to *all* of the millions of California consumers who bought them over a nine-year time-period simply because the products were allegedly not "sustainably" or "responsibly" sourced. To the contrary, the *only* evidence Falcone offered relating to consumer perception—a survey filed for the first time on reply that the district court declined to consider, Order 25—purported to show that 16.7% of consumers

15

were "indifferent" to whether child labor was used in the production of their chocolate, and 13.9% of consumers supposedly were *more likely* to purchase chocolate if they knew it was made with child labor. Dkt. 138-3 at 12. In other words, Falcone's own proffered evidence shows that, for at least 30% of consumers, chocolate would not be "worthless" even if it was produced using child labor.

Falcone herself testified that she got value from the chocolate because Nestlé USA's products "really taste better" than competitors' chocolate. Dkt. 132-1 at 29. The mere fact that some unidentified segment of consumers may have "strong . . . feelings" about "how their products are produced" does not make chocolate that "taste[s] better" worthless for all consumers. Order 22. Other courts have distinguished *Lambert* on this basis, reasoning that its discussion of full-refund models does not apply in situations where "it strains credulity that no putative class members used or benefitted" from the challenged product or service. *E.g.*, *Robinson v. OnStar, LLC*, 2020 WL 364221, at *23 (S.D. Cal. Jan. 22, 2020).

In fact, this Court has rejected the "full refund" model under similar circumstances in at least three unpublished opinions:

16

- *Reitman v. Champion Petfoods USA, Inc.*, 830 Fed. App'x. 880 (9th Cir. 2020): The Court affirmed rejection of a full-refund model in class action challenging allegedly mislabeled dog food because "there were potential class members" who could not have been injured under the plaintiff's theory. *Id.* at 882.

- *Chowning v. Kohl's Department Stores, Inc.*, 733 Fed. App'x. 404 (9th Cir. 2018): The Court held a "'full refund' is unavailable" where the plaintiff "admits that she received some value from the" challenged products. *Id.* at 406.

- *Brazil v. Dole Packaged Foods, LLC*, 660 Fed. App'x. 531 (9th Cir. 2016): The Court affirmed decertification of a class challenging an "All Natural Fruit" label in part because the plaintiff had not proved that the presence of synthetic ingredients in the products made them "valueless." *Id.* at 535.

In line with these opinions, numerous district courts have "held that the full refund model is not appropriate in [mislabeled food and beverage cases], because the model fails to take into account that consumers still received some benefit when they consumed the product . . . and it also fails to take into account that consumers may have still

purchased the product had they known the truth about the product." *Capaci v. Sports Rsch. Corp.*, 2022 WL 1133818, at *16 (C.D. Cal. Apr. 14, 2022) (collecting cases).

California courts have similarly rejected the "full refund" model even with respect to tobacco that was deceptively marketed as less harmful, reasoning that consumers "obtained value" from smoking "lower tar" cigarettes. *In re Tobacco Cases II*, 240 Cal. App. 4th 779, 802 (2015). If that is true, it is "inherently implausible" here that consumers "received *no* value" from eating chocolate. *Id.*

In approving Falcone's full-refund model, the district court relied on the California Supreme Court's decision in *Kwikset Corp. v. Superior Court* 51 Cal.4th 310 (Cal. 2011). But *Kwikset* analyzed only whether a single consumer had statutory standing to bring consumer-protection claims challenging "Made in USA" labels—not whether a full-refund damages model would be appropriate for every consumer on a classwide basis. *See id.* at 317.

If anything, *Kwikset* illustrates exactly the kind of individualized issues that preclude application of a classwide full-refund damages model here. The district court highlighted *Kwikset*'s observation that

18

"[n]onkosher meat might taste and in every respect be nutritionally identical to kosher meat, but to an observant Jew who keeps kosher, the former would be worthless." Order 22 (quoting *Kwikset*, 51 Cal.4th at 330). The court then held that chocolate allegedly procured in part with child labor could be similarly worthless to a consumer with "strong . . . feelings" on this issue. *Id*. But *Kwikset* did not (and obviously could not) say that nonkosher meat is worthless to *all* consumers—only to those who keep kosher. And the certified class is not limited to those consumers with "strong feelings" on child labor; it is a class of "all" consumers that necessarily includes many who do not share those "strong feelings."

The Court should grant Rule 23(f) review to provide guidance on the permissible scope of "full refund" theories in consumer class actions in a published opinion.

## II. The District Court Manifestly Erred in Certifying a Consumer-Deception Class When the Evidence Demonstrates That Most Consumers Did Not See the Allegedly Deceptive Representations.

This Court has explained that, where evidence shows "the same material misrepresentations have actually been communicated to each

member of a class," consumer-deception claims may be "capable of classwide resolution." *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1237 (9th Cir. 2024) (emphasis omitted). By contrast, class treatment is not appropriate where evidence shows "a large portion of the proposed class was never exposed to the challenged [representations] . . . and thus could not have been injured by those [representations] in the first place." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 732 (9th Cir. 2020).

Nestlé USA presented a wealth of evidence showing that most consumers never saw the mostly back-label representations at issue here. Nevertheless, the court presumed that "all class members *by definition* received the representations" simply because those representations appeared somewhere on the label of a product they bought. Order 20 (emphasis added). In other words, the court held that a consumer need not have actually *seen* a representation for it to "have actually been communicated" to the consumer. *DZ Rsrv.*, 96 F.4th at 1237. That ruling illustrates the need for this Court to clarify whether classwide exposure can be established when evidence shows that most class members never saw the challenged representations.

20

**1.** In *DZ Reserve*, this Court upheld certification of a class where it was "undisputed that all class members were exposed to" and "encountered the same misrepresentation." 96 F.4th at 1237.

The opposite is true here: It is undisputed that most class members never saw or encountered the challenged representations. Nestlé USA submitted an expert report and survey concluding that "virtually *no one* indicated seeing any of the challenged claims" on the labels. Dkt. 132-2 ¶¶ 64–80. Likewise, a separate "eye tracking study" conducted as part of Nestlé USA's market research showed that very few people looked at the area of the label with the small-font challenged representations. *See* Order 20. By contrast, Falcone submitted *no* evidence suggesting that consumers saw the small, mostly back-label representations she challenges. All of this confirms what this Court has said in other labeling cases: Consumers often "won't have the time or interest to read . . . the back of the box" when buying ordinary groceries, like the chocolate products at issue in this case. *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1018 (9th Cir. 2020).

The district court below cast aside this evidence because it believed that "all class members by definition received the

21

representations" given that they were placed on "the back of the package." Order 20 & n.9. The court thus held that the classwide exposure requirement is *always* satisfied for any on-label statement because the advertiser must have "intended" for the statement to be seen if it bothered to put it there. *Id.* That ruling is manifestly erroneous, would effectively mandate class certification in every case that challenges a product label, and contradicts the approach taken by California courts.

When determining whether exposure can be decided on a classwide basis, the California Court of Appeal has asked whether consumers *actually* "saw" challenged statements—not simply whether they *could have* seen those statements. For instance, in *Downey v. Public Storage, Inc.*, the court found no uniform exposure because "[s]ubstantial evidence" showed that not all consumers "saw or heard" the challenged advertisement, and "exposure to the advertisement [was not] a practical inevitability, as the evidence showed that people could" make a purchase "without ever seeing [the challenged] advertisements." 44 Cal. App. 5th 1103, 1117 (2020). Likewise, in *Cohen v. DIRECTV, Inc.*, the court held that "common issue of fact do

22

not predominate . . . because the class would include subscribers who *never saw*" the challenged statements "before deciding to purchase." 178 Cal. App. 4th 966, 979 (2009) (emphasis added)

Because Falcone has not established "that each individual was exposed to the same misrepresentations or deceptions," answering that question will require asking consumers one-by-one whether they actually saw the challenged representations, which would predominate over any common issues. *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1069 (9th Cir. 2014).

**2.** The district court's blanket approach to exposure also violates Article III because it has resulted in certification of a damages class made up of millions of consumers who never saw the allegedly misleading statements, and thus could not have relied on them, or suffered any concrete injury. "Article III standing requires a concrete injury even in the context of a statutory violation," and in a class action, "[e]very class member must have Article III standing in order to recover individual damages." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205, 2208 (2021). Courts therefore must "determine whether individualized inquiries into this standing issue would predominate

23

over common questions" before certifying a damages class.  *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 n.12 (9th Cir. 2022) (en banc).  And if a class "include[s] a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct, the class is defined too broadly to permit certification."  *Id.* at 669 n.14.

The district court determined predominance was satisfied solely by reference to the "reasonable consumer" standard applicable to California's consumer-protection statutes.  Order 11–12, 20.  But that determination does not resolve the issue of Article III standing because a mere "statutory violation" does not "afford a plaintiff standing" absent a concrete injury.  *TransUnion*, 141 S. Ct. at 2207.

The district court's approach here cannot be reconciled with *TransUnion*, *Olean*, or other appellate decisions.  For example, in *Avritt v. Reliastar Life Insurance Co.*, 615 F.3d 1023 (8th Cir. 2010), the Eighth Circuit rejected certification of a class asserting California consumer-protection claims under similar circumstances as those in this case.  In *Avritt*, the court held that Article III precluded certification when there were non-deceived consumers in the class

because, even assuming California statutes allow a plaintiff to "bring a class action on behalf of a group of individuals who may not have had a cause of action themselves, [that] is inconsistent with the doctrine of standing as applied by federal courts." *Id.* at 1034.

This Court should grant Rule 23(f) review and reaffirm that neither California law nor Article III permits certification of a damages class containing consumers who did not see—and thus "could not have been injured" by—the challenged representations. *Castillo*, 980 F.3d at 732.

## III. The District Court Manifestly Erred in Holding That a Plaintiff Has Standing to Seek Injunctive Relief to Change Labels She Does Not Want Changed and Is No Longer Deceived By.

A consumer "may have standing to seek an injunction against false advertising or labeling"—and therefore, standing to serve as the representative for a class seeking an injunction under Rule 23(b)(2)—if she will have "no way of determining whether the representation" is true in the future, and therefore "will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the

product although she would like to." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018).

The district court held Falcone has standing to seek injunctive relief, and certified a class seeking such relief, based on her allegation that she "stopped purchasing [Nestlé USA's products] because she can no longer rely on" the labeling. Order 6, 24. But the court never addressed Falcone's testimony that the labels she is seeking to change are already "perfect." Nor did the court address the fact that—far from having "no way of determining" the truth of Nestlé USA's labeling statements—Falcone knows exactly how to find regularly updated reports about the company's sourcing practices. Both of these oversights in the certification order are manifest errors that highlight the need for this Court to provide additional guidance.

**1.** The district court held that Falcone will suffer a future injury if the challenged statements are not removed from the product labels. Order 3. Falcone's own sworn testimony contradicts that ruling.

Falcone challenges a range of labels, only some of which are still in use. *See* Order 25–26. At the time of her deposition, Falcone was "surprised" to see what labels were currently on store shelves, as she

26

thought they looked different. *See* Dkt. 132-1 at 57–58. After reviewing the current labels, Falcone agreed that her concerns had already been "remedied," that the labels were "perfect," and that she has "no problems" with them. *Id.* 54–56, 68. She concluded by testifying: "put them for sale, and I'm going to go buy them." *Id.* at 55.

Falcone likewise agreed that the efforts of the Nestlé Cocoa Plan substantiate all of the label statements. Falcone said she would "absolutely" buy Nestlé USA products if more Nestlé Cocoa Plan reports were published after 2019—which they have been. Dkt. 132-1 at 23–24, 60, 68. She believes a company can claim to use "sustainably sourced cocoa" if it follows the Rainforest Alliance guidelines—which Nestlé USA does. *Id.* at 40–41. And she agreed the company is "putting their money where their mouth is," and "is delivering" on the statements made on product labels. *Id.* at 63–64, 67.

Put simply, Falcone suffers no risk of "injury" from labels she thinks are "perfect" and that she testifies she is "going to go buy" without any changes needing to be made. Likewise, Falcone cannot be injured by labeling statements she believes to be fully substantiated. The district court manifestly erred by ignoring this testimony.

Nor does Falcone have standing even if she is hoping to change the way Nestlé USA sources cocoa, rather than the way it labels products. The district court lacks the power in a labeling case to "compel Nestle to make any particular product by way of an injunction." *Prescott v. Nestle USA, Inc.*, 2020 WL 3035798, at *6 (N.D. Cal. June 4, 2020). And if labeling changes alone would not make Falcone buy the products again, the relief sought in her injunction "would not be substantially likely to redress her claimed injury," and an injunction requiring Nestlé USA to change its products is "beyond the district court's remedial power to issue." *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018).

The D.C. Circuit recently analyzed similar clams and determined that a plaintiff lacked standing to seek injunctive relief. *See Animal Legal Def. Fund, Inc. v. Vilsack*, 111 F.4th 1219 (D.C. Cir. 2024). There, the plaintiff alleged that outdoor imagery on chicken product labels was misleading because the chickens were raised indoors "in a way that '[was] anathema to [plaintiff's] ethical views.'" *Id.* at 1228. The court held that the plaintiff lacked standing to seek injunctive relief because she would not "continue to . . . purchase that product"

even after labeling changes, given her ethical objections to the underlying practices. *See id.* The same is true here: If Falcone would buy the products only if the cocoa sourcing changes, she does not have standing to seek changes to the labels.

**2.** A plaintiff has standing to seek label changes if she has "no way of determining" the underlying truth of the label statements moving forward. *Davidson*, 889 F.3d at 972. Falcone alleges that the information purportedly demonstrating that Nestlé USA product labels are misleading—and thus the information that will allow her to judge the truth or falsity of those labels prior to purchase—is located on the Nestlé Cocoa Plan website, to which Falcone has ready access. *See* Dkt. 132-1 at 16–17.

That the district court held Falcone had standing despite this evidence highlights the need for this Court to resolve "a split of authority in district courts in this circuit applying *Davidson*" to this question. *Caldwell v. Nordic Nats., Inc.*, 709 F. Supp. 3d 889, 909 (N.D. Cal. 2024). Several district courts have held that plaintiffs do not have standing when they, like Falcone, will have the ability to determine whether product labels contain false or misleading statements in the

future. *See, e.g.*, *Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897, 906 (N.D. Cal. 2021) (collecting cases). Others courts, however, have incorrectly ruled that plaintiffs have standing even when they "can remedy confusion about the product before purchase." *Caldwell,* 709 F. Supp. 3d at 909 (collecting cases). The Court should resolve that split of authority and clarify that a plaintiff cannot have standing to seek injunctive relief when readily accessible information could remedy any confusion.

## CONCLUSION

The Court should grant review under Rule 23(f).

Dated:  October 10, 2024                    Respectfully submitted,

<u>/s/ *Theodore J. Boutrous Jr.*</u>
Theodore J. Boutrous Jr.

*Counsel for Petitioner*
*Nestlé USA, Inc.*

## CERTIFICATE OF COMPLIANCE

This petition complies with the word limit of Circuit Rules 5-2(b) and 32-3(2) because it contains 5,597 words, excluding the portions exempted by Federal Rules 5(b)(1)(E) and 32(f) and Circuit Rule 5-2(b). The petition complies with the typeface and type-style requirements of Federal Rules 32(a)(5)(A) and (6) because it has been prepared using Microsoft Word in 14-point, New Century Schoolbook font.

Dated:  October 10, 2024                    Respectfully submitted,

                                            /s/ *Theodore J. Boutrous Jr.*
                                               Theodore J. Boutrous Jr.

                                            *Counsel for Petitioner*
                                            *Nestlé USA, Inc.*

## CERTIFICATE OF SERVICE

I certify that on October 10, 2024, I electronically filed the foregoing petition with the Clerk of Court for the U.S. Court of Appeals for the Ninth Circuit using the ACMS system. On the same day, I caused the petition to be served by email and by commercial carrier for next-day delivery on counsel for plaintiffs-respondents:

Helen I. Zeldes
hzeldes@sshhzlaw.com
Joshua A. Fields
jfields@sshhzlaw.com
Aya Dardari
adardari@sshhzlaw.com
SCHONBRUN SEPLOW HARRIS
HOFFMAN & ZELDES LLP
501 West Broadway, Suite 800
San Diego, CA 92101

Paul L. Hoffman
hoffpaul@aol.com
John C. Washington
jwashington@sshhzlaw.com
SCHONBRUN SEPLOW HARRIS
HOFFMAN & ZELDES LLP
200 Pier Avenue, #226
Hermosa Beach, CA 9024

Catherine E. Sweetser
catherine.sdshhh@gmail.com
SCHONBRUN SEPLOW HARRIS
HOFFMAN & ZELDES LLP
9415 Culver Boulevard, #115
Culver City, CA 90232

Michael R. Reese
mreese@reesellp.com
REESE LLP
100 West 93rd Street, 16th Floor
New York, New York 10025

George V. Granade
ggranade@reesellp.com
REESE LLP
8484 Wilshire Boulevard, Ste. 515
Los Angeles, California 90211

Dated: October 10, 2024

Respectfully submitted,

/s/ *Theodore J. Boutrous Jr.*
Theodore J. Boutrous Jr.

*Counsel for Petitioner*
*Nestlé USA, Inc.*

32

# APPENDIX

Exhibit 1: Order Granting Plaintiff's Motion for Class Certification and Denying Defendant's Motion to Strike

# EXHIBIT 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIE FALCONE,<br><br>                                    Plaintiff,<br><br>v.<br><br>NESTLE USA, INC.,<br><br>                                    Defendant. | Case No.:  3:19-cv-723-L-DEB<br><br>**CLASS ACTION**<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND DENYING DEFENDANT'S MOTION TO STRIKE**<br><br>**[ECF Nos. 125, 153]** |

Pending before the Court in this action alleging deceptive product labeling is Plaintiff's motion for class certification.  Defendant filed an opposition, and Plaintiff replied.  In addition, Defendant filed a Motion to Strike or Exclude the Declarations of Roger Mendez, William Robert Ingersoll, and Andrea Lynn Matthews.  Plaintiff filed an opposition and Defendant replied.  The Court decides the motions on the briefs without oral argument.  *See* Civ. L. R. 7.1(d)(1).  For the reasons stated below, Plaintiff's motion is for class certification is granted, and Defendant's motion to strike is denied.

/ / / / /

# I.    **BACKGROUND**

According to the operative complaint (ECF No. 78), Defendant is the world's largest food company and is best known for its chocolate products.  It purchases approximately 414,000 tons of cocoa annually.

Plaintiff regularly purchased Defendant's chocolate chip and cocoa mix products. The product labels displayed statements as "sustainably sourced," "responsibly sourced," "sustainably harvested cocoa beans," "improving the lives of cocoa farmers," and "better farming, better lives" as well as the "NESTLÉ Cocoa Plan" ("NCP"), "Rainforest Alliance," and "UTZ" logos (collectively "Sustainability Representations").  For purposes of class certification, the parties stipulated to a list of product labels relevant to this action.  (ECF No. 125-2, Zeldes Decl., Ex. 2.)[1]  The Sustainability Representations led Plaintiff and other consumers to believe that the products were produced in accordance with environmentally and socially responsible standards.  Plaintiff alleges that she relied on these representations when she purchased Defendant's products.

Plaintiff claims the Sustainability Representations were deceptive because Defendant sourced its cocoa from West African plantations which rely on child labor, including child slave labor, and contribute to deforestation.  Plaintiff also claims that, according to Defendant's own statements, the child labor conditions had worsened rather than improved after the inception of the NCP.  Plaintiff alleges that she would not have purchased the products if she had known the truth.

In her operative complaint Plaintiff claims violations of the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* ("CLRA"), and the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"), on her own behalf as well as on behalf of a putative class of California consumers.  She seeks injunctive

---

[1]    The labels were filed as Exhibits 3-5 to the Zeldes Declaration.  (ECF No. 140.) The Sustainability Representations made on each label are summarized in Appendix A to Defendant's opposition.  (ECF No. 132 ("Appendix").)

relief and a refund for the products purchased. The Court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d).

With her pending motion Plaintiff seeks to certify two classes. First, she seeks to certify, a class pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure[2] to recover monetary relief. The class is defined as follows:

> All persons who purchased at least one of the following Nestlé Products during the following time periods:
> (i)      Semisweet Morsels (12 or 72 oz) from 11/21/18 to present;
> (ii)     Mini Semisweet Morsels (10 or 20 oz) from 10/17/17 to present;
> (iii)    Dark Chocolate Morsels (10 or 20 oz) from 5/4/15 to present;
> (iv)    Milk Chocolate Morsels (11.5 or 23 oz) from 4/19/15 to present;
> (v)     Mini Marshmallows Hot Cocoa (6 Pack or 8 Pack) or Rich Milk Chocolate Hot Cocoa (6 Pack, 8 Pack, or 27.7 oz) from 12/14/17 to present;
> (vi)    Nesquik Powder 16 oz from 7/6/15 to 4/27/20;
> (vii)   Nesquik Powder (9.3 or 41.9 oz) from 5/3/15 to 12/12/17;
> (viii)  Nesquik Powder 18.7 oz from 4/7/17 to present.

(ECF No. 141, Mot. at 18; hereinafter "Refund Class".) Second, Plaintiff moves to certify a class pursuant to Rule 23(a) and (b)(2) for injunctive relief, defined as follows:

> All persons who purchased at least one Nestlé Product[3] labeled with the words "sustainably sourced", "responsibly sourced", uses "sustainably harvested cocoa beans", "improve[s] the lives of cocoa farmers", or "better lives" and that has "Nestlé Cocoa Plan", "Rainforest Alliance" and/or "Utz" logos, during the period from April 19, 2015, to the present.

(*Id.*; hereinafter "Injunctive Relief Class".) Plaintiff seeks injunctive relief requiring Defendant to remove the Sustainability Representations from the product labels unless it can trace the cocoa beans to sources without child labor or environmental destruction.

---

[2]      All further references to "Rule" and "Rules" are to the Federal Rules of Civil Procedure.

[3]      The reference to "Nestlé Products" is to the products listed in the definition of the Refund Class.

3:19-cv-723-L-DEB

Defendant opposes certification arguing that Plaintiff lacks standing and fails to meet Rule 23 requirements.

## II. DISCUSSION

### A. Plaintiff's Standing

Plaintiff is the sole class representative named in this action. Defendant challenges her standing under UCL and CLRA and argues she lacks Article III standing to seek injunctive relief. "Standing is the threshold issue in any suit. If the individual plaintiff lacks standing, the court need never reach the class action issue." *NEI Contracting and Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.,* 926 F.3d 528, 532 (9th Cir. 2019).[4]

#### 1. Statutory Standing

Based on deposition testimony, Defendant argues that Plaintiff lacks statutory standing to assert UCL and CLRA claims. For the reasons stated below, the argument is rejected.

Only "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition" may bring an action under the UCL. Cal. Bus, & Prof. Code § 17204. This provision requires Plaintiff to "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the ... false advertising that is the gravamen of the claim." *Kwikset Corp. v. Super. Ct. (Benson),* 51 Cal.4th 310, 322 (2011) (emph. in orig.) These requirements are satisfied if the plaintiff would not have purchased the product or would have not been willing to pay as much, but for the false representation. *Id.* at 330; *see also id.* at 323 ("surrender in a transaction more ... than he or she otherwise would have"); *see also Hinojos v. Kohl's Corp.,* 718 F.3d 1098, 1104, 1107 (9th Cir. 2013) (*en banc*) (applying Cal. law).

/ / / / /

---

[4]    Unless otherwise noted, internal quotation marks, ellipses, brackets, citations, and footnotes are omitted from citations.

4

To have standing under the CLRA, a plaintiff must show that he or she "suffer[ed] any damage as a result of" the misrepresentation. Cal. Civ. Code § 1780(a). The term "any damage" is broader than "actual damages and may encompass harms other than pecuniary damages." *Steroid Hormone Product Cases,* 181 Cal. App. 4th 145, 156 (2010) ("*Steroid*") (quoting *Meyer v. Sprint Spectrum L.P.*, 45 Cal.4th 634, 640 (2009)). Because this standard "includes even minor pecuniary damage," any plaintiff who has standing under the UCL also has standing under the CLRA. *Hinojos,* 718 F.3d at 1108.

Defendant claims that Plaintiff lacks standing because she admitted she was not deceived by the Sustainability Representations, that the labels were not misleading as Defendant was not falling short of its representations, and that she never thought of child labor when she read the labels. Defendant misconstrues Plaintiff's testimony.

Plaintiff purchased Defendant's products because of the environmental and social responsibility representations on the product labels. (*See, e.g.,* Falcone Dep.[5] at 34, 41-42, 47, 51-52, 63, 73, 96-98, 118, 133, 143, 144-45, 146-48, 157, 190.) She stopped purchasing the products when she found out the representations were not true. (*See, e.g., id.* at 30, 40-41, 49, 52, 63, 104.) She associated the representations on the labels with the "wonderful things" Defendant was doing for the environment and cocoa farmers (*id.* at 52, 95) and was horrified when she discovered that Defendant's cocoa production caused deforestation and included child slave labor (*id.* at 32-33, 35-36, 40, 52-53, 62-63, 77, 95, 104-05, 106-08). Plaintiff testified that the labels were deceptive because the environmental and social responsibility representations were not true. (*See, e.g., id.* at 76-77, 90, 104, 112-13, 116-17, 197, 205-07, 209, 212-13, 220-23.) Because of the deception, Plaintiff has lost trust in Defendant's representations. (*See id.* at 120-21, 227, 252-53.)

---

[5] Excerpts from Plaintiff's deposition can be found at Zeldes Decl. Ex. 6 and ECF No. 132-1, Loose Decl. Ex. 2. All Plaintiff's exhibits are attached to the Zeldes declaration and all Defendant's exhibits are attached to the Loose declaration.

3:19-cv-723-L-DEB

Contrary to Defendant's contention, Plaintiff testified that had she known that the Sustainability Representations were false, she would not have purchased Defendant's products (Falcone Dep. at 73, 106.)  She also testified that she lost money by purchasing the products.  (*Id.* at 86.)  Plaintiff was willing to, and did, pay a premium because of the Sustainability Representations on the labels.  (*Id.* at 145).  This testimony is sufficient to establish statutory standing under the UCL and CLRA.

### 2.    Article III Standing to Seek Injunctive Relief

Defendant further argues that Plaintiff cannot meet the injury element of Article III standing to seek injunctive relief.  In this regard, a plaintiff must show ongoing injury or threat of future injury.  "The plaintiff must demonstrate that [she] has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that [she] will again be wronged in a similar way."  *DZ Reserve v. Meta Platforms, Inc.,* 96 F.4th 1223, 1240 (9th Cir. 2024).  The primary purpose and effect of public injunctive relief under the UCL and CLRA is to prohibit unlawful acts that threaten future injury to the general public.  *McGill v. Citibank, N.A.,* 2 Cal.5th 945, 955 (2017); *Davidson v. Kimberly-Clark Corp.,* 889 F.3d 956, 970 (9th Cir. 2018).  Accordingly,

> [c]onsumer fraud plaintiffs can satisfy the imminent injury requirement by showing they will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although they would like to.

*DZ Reserve,* 96 F.4th at 1240.

Plaintiff testified she would like to purchase Defendant's products again in the future.  (*See, e.g.,* Falcone Dep. at 121.)  She stopped purchasing them since learning about child labor and environmental damage and has not purchased again because she no longer can rely on Defendant's labeling.  (*See id.* at 227 ("I don't know what to trust anymore."); *see also, e.g., id.* at 98, 120-21, 227-29, 252-53.)  This is sufficient to show imminent injury for purposes of Article III standing to seek injunctive relief.

### B.   Class Certification

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) ("*Dukes*").  First, the proposed class action must satisfy Rule 23(a) with its four prerequisites of numerosity, commonality, typicality, and adequacy.  Fed. R. Civ. Proc. 23(a).  Second, Plaintiff "must show that the class fits into one of the three categories" under Rule 23(b).  *Olean Wholesale Grocery Corp. v. Bumble Bee Foods,* 41 F.4th 651, 663 (9th Cir. 2022) (*en banc*) ("*Olean*").

Plaintiff seeks to certify one class each under Rule 23(b)(3) and (2).  Rule 23(b)(3) "enables the potential recovery of damages and requires both that 'questions of law or fact common to class members predominate over any questions affecting only individual members,' and that a class action be 'superior to other available methods for fairly and efficiently adjudicating the controversy.'"  *DZ Reserve,* 96 F.4th at 1232 (quoting Fed. R. Civ. P. 23(b)(3)).  On the other hand, Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief ... is appropriate respecting the class as a whole."  *Id.* (quoting Fed. R. Civ. P. 23(b)(2)).

Plaintiff "must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence."  *Olean*, 31 F.4th at 665.

> Although ... a court's class-certification analysis must be rigorous and may entail some overlap with the merits of the plaintiff's underlying claim, Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.  Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-66 (2013).  If a court is not fully satisfied that the requirements of Rules 23(a) and (b) are met, certification should be denied.  *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982).

3:19-cv-723-L-DEB

### 1.    Rule 23(a) Prerequisites

#### a.    Numerosity

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). "For purposes of this requirement, 'impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Johnson v. City of Grants Pass,* 72 F.4th 868, 886 (9th Cir, 2023), *rev'd on other grounds, City of Grants Pass v. Johnson,* 144 S.Ct. 2202 (2024); *Harris v. Palm Springs Alpine Estates, Inc.,* 329 F.2d 909, 913-14 (9th Cir. 1964).  While "[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations[,]" *Gen. Tel. Co. of the NW v. EEOC,* 446 U.S. 318, 330 (1980), it has been held that fifteen class members would be too few and more than sixty may be sufficient, *Harik v. Cal. Teachers Ass'n,* 326 F.3d 1042, 1051-52 (9th Cir. 2003).  The classes proposed here are comprised of California consumers who purchased at least one of the listed products over several years.  The Court finds that the proposed classes are sufficiently numerous that joinder of all members would be impracticable.  Defendant does not contend otherwise.

#### b.    Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class[.]"  To meet this requirement, the class members' claims must depend on a common contention, which must be of such nature that it is capable of classwide resolution.  Decision on the contention must

> resolve an issue that is central to the validity of each one of the claims in one stroke.  [¶]  What matters to class certification is not the raising of common "questions" ... but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Dukes*, 564 U.S. at 350 (emph. in orig.).  Even a single such common question meets the commonality requirement.  *Id.* at 359.

3:19-cv-723-L-DEB

> In determining whether the common question prerequisite is met, a district court is limited to resolving whether the evidence establishes that a common question is *capable* of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial.

*Olean*, 31 F.4th at 666-67 (emph. in orig.).

Plaintiff argues the commonality requirement is met because the question whether Defendant's Sustainability Representations were likely to deceive consumers is common to all class members. Defendant counters that this issue cannot be resolved on a classwide basis because the Sustainability Representations were not uniform, and the consumers did not uniformly understand them.

The commonality analysis begins with the underlying causes of action. *DZ Reserve,* 96 F.4th at 1233.

> Under California's consumer protection laws, a consumer who pays extra for a falsely labeled or advertised product may recover the premium she paid for that product. California law also permits that consumer to seek a court order requiring the manufacturer of the product to halt its false advertising. California has decided that its consumers have a right, while shopping in a store selling consumer goods, to rely upon the statements made on a product's packaging.

*Davidson,* 889 F.3d at 960-61.

The UCL is a broad California statute that prohibits business practices that constitute "unfair competition," which is defined, as relevant here, as any unlawful, unfair or fraudulent business act or practice[.]" Cal. Bus. & Prof. Code § 17200.[6] "The substantive right extended to the public by the UCL is the right to protection from fraud,

_____

[6]     Although Plaintiff alleged a UCL claim under each of its three prongs (ECF No. 78, Third Am. Class Action Compl. ¶¶ 117-33) and moves for class certification under all of them, Plaintiff's motion is focused on the fraudulent prong with the remaining two prongs addressed in a footnote (Mot. at 25 n.18). Accordingly, this Order addresses only the fraudulent UCL prong.

deceit and unlawful conduct, and the focus of the statute is on the defendant's conduct." *In re Tobacco II Cases*, 46 Cal.4th 298, 324 (2009) ("*Tobacco II*"). UCL's "fundamental purpose" is to protect consumers from unfair businesses practices. *Id.* "If a defendant is found to have engaged in any of the three varieties of unfair competition," *Steroid*, 182 Cal. App.4th at 154, the UCL provides for injunctive relief and restitution, *Kasky*, 27 Cal.4th at 950. *See* Cal. Bus. & Prof. Code § 17302.

To obtain relief on a UCL claim based on false advertising or promotional practices as alleged here, Plaintiff need "only to show that members of the public are likely to be deceived." *Tobacco II*, 46 Cal.4th at 312. This standard "prohibit[s] not only advertising, which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Kasky v. Nike,* 27 Cal.4th 939, 951 (2002).

Plaintiff also seeks relief under the CLRA. The CLRA was enacted "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code, § 1760. "'[T]o promote' these purposes, the Legislature directed that the CLRA 'be liberally construed and applied.'" *McGill,* 2 Cal.5th at 954 (quoting Cal. Civ. Code, § 1760). Plaintiff's complaint focuses on section 1770(a)(5), which provides in pertinent part as follows,

> The unfair methods of competition and unfair or deceptive acts or practices listed in this subdivision undertaken by any person in a transaction intended to result or that results in the sale ... of goods ... to any consumer are unlawful: [¶]
>
> (5) Representing that goods ... have ... characteristics ... that they do not have[.]

"A consumer who suffers damage as a result of a prohibited act or practice can sue for damages, restitution, and an injunction." *Chapman v. Skype, Inc.,* 220 Cal. App. 4th 217, 230 (2013).

/ / / / /

10

The standard for determining whether a defendant violated section 1770(a)(5) "is the same as that for determining whether there was false advertising under the UCL[, *i.e.,*] whether the representation was likely to deceive consumers". *Chapman,* 220 Cal. App. 4th at 230 (citing *Kasky*, 27 Cal.4th at 951); *see also Williams v. Gerber,* 552 F.3d 934, 938 (9th Cir. 2008) (citing *Kasky*, 27 Cal.4th at 951).

Plaintiff argues she can prove on a classwide basis that the Sustainability Representations were likely to deceive consumers because the analysis is based on the "reasonable consumer standard." *Skinner v. Ken's Foods, Inc.,* 53 Cal. App. 5th 938, 948 (2020); *Chapman,* 220 Cal. App. 4th at 226; *Williams,* 552 F.3d at 938. A reasonable consumer "is neither the most vigilant and suspicious of advertising claims nor the most unwary and unsophisticated, but instead is the ordinary consumer within the target population." *Chapman,* 220 Cal. App. 4th at 226. Accordingly, the standard does not call for individualized proof. Instead, the focus is on Defendant's conduct toward the purchasers of the relevant products. *See Tobacco II,* 46 Cal.4th at 324.

Defendant counters that classwide proof is not possible because this action is based on 59 different product labels with different Sustainability Representations. For example, not all labels featured the UTZ or Rainforest Alliance logos, and not all of them included every permutation of the sustainability claim. However, every label referenced the NCP, and all included at least one of the representations that the cocoa was "sustainably" or "responsibly" sourced, or that Defendant was improving the lives of cocoa farmers. (*See* Def.'s Appendix.)

Variations in messaging are not necessarily fatal to class certification. *See DZ Reserve,* 96 F.4th at 1234.

> Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions.

/////

*Id.* at 1236.  In this regard, "similarly misleading sales presentations" can represent a cohesive class, even though their exact wording varies.  *Id.* ("[D]ifferently worded sales pitches, and disparate modes of exposure" do not defeat uniformity of representations.).

To argue that the differences in the Sustainability Representations do not detract from the uniformity of Defendant's marketing messaging, Plaintiff points to Defendant's records to show that Defendant viewed the "sustainably sourced" and "responsibly sourced" statements to be interchangeable and include both consumers' environmental and social concerns.  (*See, e.g.,* Pl. Ex. 42 at slides 2, 9, 10; Pl. Ex. 41 at 269; *see also* Pl. Ex. 33 at slide 6; Pl. Ex. 22; Pl. Ex. 28 at slide 28.)  Defendant formulated this messaging based on consumer research.  (*See* Pl.'s Ex. 20 at 18 ("type of information consumers want to know" and grouping environmental and social concerns under Sustainable Sourcing Strategies for cocoa products); Pl. Ex. 42 slide 2.)

"[T]he class action mechanism would be impotent if a defendant could escape much of his potential liability for fraud by simply altering the wording or format of his misrepresentation across the class of victims."  *DZ Reserve,* 96 F.4th at 1236.  Given that all class members encountered interchangeable Sustainability Representations, the variation in their wording does not detract from the uniformity of the message conveyed.

To the extent Defendant argues that different consumers had different understanding of the Sustainability Representations, the argument is rejected.  The UCL and CLRA preclude individual inquiry into class members' understanding because the analysis is based on the "reasonable consumer" standard.  *See Chapman,* 220 Cal. App. 4th at 226.  The remainder of the analysis, whether the Sustainability Representations were false or likely to deceive a reasonable consumer, turns on Defendant's conduct, *i.e.,* whether Defendant's cocoa was sustainably produced.  This issue is the same for all class members.

Whether or not Plaintiff can prove at trial that the Sustainability Representations were likely to deceive a reasonable consumer, this issue can be resolved in one stroke for / / / / /

12

all class members and addresses a central element of both the UCL and CLRA claims. Plaintiff has therefore sufficiently established commonality under Rule 23(a)(2).

### c. Typicality

Rule 23(a)(3) requires that "the claims ... of the representative parties are typical of the claims ... of the class[.]"  "[T]he commonality and typicality requirements of Rule 23(a) tend to merge" because

> [b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

*Dukes*, 564 U.S. at 249 n.5.  "[R]epresentative claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

> The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.

*Wolin v. Jaguar Land Rover N. Am., LLC,* 617 F.3d 1168, 1175 (9th Cir. 2010).

Defendant argues that Plaintiff is not typical because she admitted she was not deceived.  As discussed in Section A.1. above, Plaintiff testified she was deceived by Defendant's labeling and, contrary to Defendant's contention, had a problem with the Sustainability Representations on the labels because they were false, and she could no longer trust Defendant's product claims.  (*See* Falcone Dep. at 87-90, 179, 220-22, 245 ("[i]f it's true"), 252-53.)

Defendant further argues that the Sustainability Representations were not the only reason why Plaintiff purchased Nestle Products, pointing to the fact that Plaintiff prefers the taste of Nestle chocolate to others and had been a Nestle fan since childhood.  For purposes of the UCL and CLRA, the Sustainability Representations need not be "the sole

or even the predominant or decisive factor influencing [the purchasing decision.]  It is enough that the representation has played a substantial part, and so had been a substantial factor, in influencing [her] decision." *Tobacco II,* 46 Cal.4th at 326-27.  Accordingly, the fact that Plaintiff had multiple reasons for purchasing the products does not preclude typicality for purposes of a class claiming UCL and CLRA violations.  Plaintiff testified that the Sustainability Representations substantially influenced her purchasing decision and the discovery that they were false caused her to stop purchasing the products.  (*See* discussion of Plaintiff's testimony in Section A.1 *supra*.)

Finally, Defendant argues Plaintiff is not typical because she did not purchase one of the products included in the class definition.  As discussed above in Section *b.*, the Sustainability Representations were sufficiently uniform to meet the commonality requirement.  Accordingly, the fact Plaintiff did not purchase one of the products does not preclude a finding of typicality.

### d.    Adequacy

Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This requirement is grounded in constitutional due process concerns: "absent class members must be afforded adequate representation before entry of judgment which binds them." *Hanlon*, 150 F.3d at 1020.  In reviewing this issue, courts must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.*  In other words, the named plaintiffs and their counsel must have sufficient "zeal and competence" to protect the interests of the rest of the class. *Fendler v. Westgate-California Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975). Furthermore,

> [i]n appointing class counsel, the court [¶] must consider:
> (i)    the work counsel has done in identifying or investigating potential claims in the action;

/ / / / /

14

      (ii)     counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

      (iii)    counsel's knowledge of the applicable law; and

      (iv)    the resources that counsel will commit to representing the class.

Fed. R. Civ. Proc. 23(g)(1)(A).

Defendant does not dispute that the adequacy requirement is met. No conflict of interest is apparent from the record between Plaintiff and her counsel on one hand and the putative classes on the other. Further, both appear to be willing and able to vigorously prosecute the action on behalf of the class members. (*See* ECF No. 125-4, Falcone Decl. ¶¶ 15-20; ECF No. 125-3, Granade Decl. & Ex. A.) Based on Plaintiff's declaration, her participation in this action so far, including participation in discovery, the statements made in her deposition and declaration, and counsel's declaration regarding qualifications and resources to prosecute this action, the Court finds that Plaintiff and her counsel meet Rule 23(a)(4) adequacy requirements, and that Plaintiff's counsel meets the criteria of Rule 23(g)(1)(A).

## 2.  Rule 23(b)(3) Refund Class

Plaintiff moves to certify a class pursuant to Rule 23(b)(3), which seeks a refund for the products purchased by the class members. A class action under Rule 23(b)(3) may be maintained if Rule 23(a) prerequisites are met and if the court finds "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Olean*, 31 F.4th at 663-64.

### a.  Predominance

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The requirements of Rule 23(b)(3) overlap with the commonality prerequisite of Rule 23(a). Under Rule 23(a), the plaintiff must show at

1   least one question of law or fact common to class members. *Olean*, 31 F.4th at 664.

2   Under Rule 23(b)(3), the plaintiff must further show that common questions predominate

3   over individualized ones. *Id.; see also DZ Reserve,* 96 F.4th at 1233 (The standard to

4   determine which elements are common, i.e., capable of being established through a

5   common body of evidence, is identical to the commonality analysis under Rule

6   23(a)(2).).

7       This calls upon courts to scrutinize "the relation between common and individual

8   questions in a case." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

> An individual question is one where members of a proposed class will need
> to present evidence that varies from member to member, while a common
> question is one where the same evidence will suffice for each member to
> make a prima facie showing or the issue is susceptible to generalized, class-
> wide proof. The predominance inquiry asks whether the common,
> aggregation-enabling, issues in the case are more prevalent or important than
> the non-common, aggregation-defeating, individual issues. When one or
> more of the central issues in the action are common to the class and can be
> said to predominate, the action may be considered proper under Rule
> 23(b)(3) even though other important matters will have to be tried
> separately, such as damages or some affirmative defenses peculiar to some
> individual class members.

*Id.*

As with commonality, the predominance inquiry begins with the elements of the

underlying causes of action. *Olean,* 31 F.4th at 665. "Rule 23(b)(3), however, does not

require a plaintiff seeking class certification to prove that each element of her claim is

susceptible to classwide proof." *Amgen,* 568 U.S. at 469.

As discussed in Section 1.b. above, Plaintiff's UCL and CLRA claims require

proof that members of the public are likely to be deceived by Defendant's

representations. *See Tobacco II*, 46 Cal.4th at 312 (UCL); *Chapman,* 220 Cal. App. 4th

at 230 (CLRA). The Court has found that this element can be proven on a classwide

basis.

/ / / / /

No further proof is required under the UCL because "restitution may be ordered without individualized proof of deception, reliance and injury if necessary to prevent the use or employment of an unfair practice." *Tobacco II*, 46 Cal.4th at 320 n.14; *see also discussion* at 320. Accordingly, "absent class members on whose behalf a private UCL action is prosecuted [need not] show on an individualized basis that they have lost money or property as a result of the unfair competition." *Id.* at 320; *see also Steroid,* 181 Cal. App. 4th at 154.

However, additional proof is required to show liability for restitution or damages under the CLRA. The CLRA "requires a showing of actual injury as to each class member." *Steroid,* 181 Cal. App. 4th at 155; *see also* Cal. Civ. Code §§ 1780(a), 1781(a). This may be presumed, however, if the misrepresentation is material. *Skinner,* 53 Cal.App.5th at 949.

> "Materiality is an objective inquiry." *Skinner,* 53 Cal.App.5th at 949.
>
> A misrepresentation is judged to be material if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question[. ¶]
>
> In the alternative, it may also be material if the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it.

*Kwikset,* 51 Cal.4th at 332-33. If a misrepresentation is material, the inference of reliance, causation, and injury arises as to the entire class, even if a defendant may be able to prove that some class members did not rely on the misrepresentation. *Steroid,* 181 Cal. App. 4th at 156-57. "Because materiality is judged according to an objective standard, [it] is a question common to all members of the class[.]" *Amgen, Inc.,* 568 U.S. at 459; *see also Skinner,* 53 Cal. App. 5th at 949 ("materiality is an objective inquiry and is thus well suited to class treatment.").

Plaintiff cites evidence to show that materiality can be proved with a common body of evidence. She notes that in formulating its sustainability marketing campaign,

Defendant performed its own materiality analysis, as demonstrated by Defendant's US16 Sustainable Sourcing Strategic Framework which outlined the "Baking Division Sustainable Sourcing Strategies" as follows, "These sustainable sourcing strategies are based on materiality analysis of what ingredients to focus on, and what type of information consumers want to know about our products.  The key ingredient categories to focus on are dairy, cocoa, and pumpkin." (Pl. Ex. 20 at 18.)  With regard to cocoa, the issues Defendant considered material to the consumers were "[Rainforest Alliance] Sourcing to demonstrate Responsibly Sourced cocoa, [¶] Deforestation, [ and ¶] Child Labor[.]" (*Id*.)

Defendant studied consumer preferences and impact of sustainability messaging on product labels (*see* Green Dep.[7] at 132-33; *see also id.* at 257-58) and found that claims in the area of sustainable and responsible sourcing were important to consumers (*id.* at 258).  In at least one internal presentation regarding sustainable sourcing, Defendant cited Harvard Business Review Research findings that from 2013-2018 sales of products with on-pack sustainability claims grew 5.6 faster than those without, and sales of chocolate with sustainability claims grew faster than the overall category (16% versus 5%) in 2017-18. (Pl. Ex. 15 at slide 5.)  Another internal presentation cited research stating that "the sustainable chocolate category is growing faster than any other [baking product] segment[.]" (Pl. Ex. 23 at slide 5.)  A further sustainability presentation regarding Defendant's Toll House brand cited statistics showing that "[c]hocolate product with environmental claims sold 5x FASTER than overall category[.]" (Pl. Ex. 16 at 554 (emph. in orig.).)  An internal email between Defendant's marketing personnel regarding Toll House morsels discussing consumer data states that "certification like 'Rainforest Alliance Certified' can have a powerful impact on purchase intent with 74% of L6M

---

[7]     Excerpts from the deposition of Heather Green, former Marketing Manager, Nestle Toll House, and Defendant's Rule 30(b)(6) witness regarding labelling statements, were filed as Plaintiff's Exhibit 7.

Baking & Cooking Staple purchasers indicating the claim would make them 'much more/somewhat more likely to purchase.'" (Pl. Ex. 43 at 744.)  Plaintiff's evidence is relevant to the materiality element as to all class members.

Defendant offers its consumer research (Def.'s Exs. 4-7) and the opinion of Dr. Ran Kivetz, defense expert, to argue that the Sustainability Representations do not matter to the consumers as much as other product claims on the labels, such as quality or 100% real chocolate, and are therefore not material to the purchasing decision.  This is a merits argument aiming to show that Plaintiff cannot prevail on the issue of materiality.

Plaintiff need not prove materiality at the class certification stage.  *DZ Reserve,* 96 F.4th at 1235.

> Instead, the pivotal inquiry is whether proof of materiality is needed to ensure that the *questions* of law or fact common to the class will predominate over any questions affecting only individual members as the litigation progresses.

*Amgen,* 568 U.S. at 467 (emph. in orig.).  Furthermore, because the question of materiality is an objective one, materiality can be proved through evidence common to the class.  *Id.*  Consequently, materiality is a common question for purposes of Rule 23(b)(3).  *Id.*  Here, rather than negating that materiality is a common question, Defendant's evidence, which consists of consumer studies, underscores that materiality can be proved (or disproved) on a classwide basis from consumer research and surveys.[8]

---

[8]     Because materiality is a common question, a district court could "reserve consideration of [the defendant's] rebuttal evidence for summary judgment or trial" and is "not required to consider the evidence in determining whether common questions predominate[] under Rule 23(b)(3)."  *Amgen,* 568 U.S. at 482.  If the Court were to consider Defendant's evidence on the merits at this stage, it shows that consumers had multiple reasons for their purchasing decisions.  It is not required that the Sustainability Representations be "the sole or even the decisive" reason for the purchase, as long as they "played a substantial part."  *Tobacco II,* 46 Cal.4th at 326-27, *Chapman,* 220 Cal. App. 4th at 229.

Next, Defendant argues that the Sustainability Representations were not material because they were mostly placed on the back of the package and, according to Defendant's eye tracking study and a study by Dr. Kivetz of one of Defendant's labels, most consumers were therefore not "exposed" to the Sustainability Representations. This argument is rejected initially as going to the merits rather than class certification requirements. Further, Defendant again offers classwide survey evidence which underscores the fact that materiality is a common question. Moreover, as to consumer "exposure," the relevant issue is whether Defendant communicated the Sustainability Representations to the class members. *See DZ Reserve,* 96 F.4th at 1237. When, as here, all class members by definition received the representations, they have been "exposed" to them. *Walker v. Life Ins. Co. of the SW*, 955 F.3d 624, 631 (9th Cir. 2020). Defendant has cited no California law, and the Court is aware of none, requiring that the misrepresentation be prominently displayed to be deemed material.[9]

Accordingly, Plaintiff has shown that she can prove materiality on a classwide basis either by showing through consumer research, including Defendant's research regarding the products at issue, that the Sustainability Representations were important to a reasonable consumer, or alternatively, through Defendant's internal records and employee testimony, that Defendant had reason to know that its target consumers would consider the Sustainability Representations important to making a purchasing decision for the products at issue. *See Kwikset*, 51 Cal.4th at 332-33.

---

[9]    If the Court were to consider Defendant's argument on the merits, *see Amgen,* 568 U.S. at 482, Plaintiff's evidence shows that Defendant itself considered back-of-the-label sustainability advertising important. (*See* Pl.'s Ex. 11 at 878.) Defendant's personnel thought about the location of the Sustainability Representations on the package to make sure that the representations were communicated to the consumers. (Green Dep. at 200-01.) Defendant found it "compelling" for the Toll House brand to place the Sustainability Representations on the back—the same side as the cookie recipe. (*See id.* at 198-200.) Based on this evidence, Defendant had reason to believe, and intended, that consumers would see the Sustainability Representation on the back of the package.

20

1    Based on the foregoing, Plaintiff has shown that liability for monetary relief under

2    UCL and CLRA can be proved by common evidence.  The only remaining question for

3    the Refund Class is the amount of the refund.  Defendant argues, however, that Plaintiff

4    cannot show predominance because she offers no proof of damages.

5    At the class certification stage, the plaintiff must offer a damages model that is

6    both "consistent with [her] liability case" and demonstrates "that damages are susceptible

7    of measurement across the entire class."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 35

8    (2013).  Accordingly, Plaintiff must be able to show that damages stemmed from

9    Defendant's actions that created legal liability.  *See Lambert v. Neutraceutical Corp.,* 870

10   F.3d 1170, 1182 (9th Cir. 2017) (applying Cal. law), *rev'd on other grounds,*

11   *Neutraceutical Corp. v. Lambert,* 586 U.S. 188 (2019) (discussing *Comcast*).

12   Plaintiff seeks a refund of the purchase price for herself and the class.  The UCL

13   provides for restitution and CLRA provides for damages or restitution.  *See Kasky,* 27

14   Cal.4th at 950 (UCL); *Chapman,* 220 Cal. App. 4th at 230 (CLRA).  An order for

15   restitution compels the defendant to return money obtained through an unfair business

16   practice to the persons from whom it was taken.  *Kasky,* 27 Cal.4th at 950.  Plaintiff's

17   restitution theory is based on the contention that the Sustainability Representations

18   deceived consumers into purchasing Defendant's products and that this caused damage

19   common to the class members.

> For each consumer who relies on the truth and accuracy of a label and is
> deceived by misrepresentations into making a purchase, the economic harm
> is the same: the consumer has purchased a product that he or she paid more
> for than he or she otherwise might have been willing to pay if the product
> had been labeled accurately.

*Kwikset,* 51 Cal.4th at 329.  Plaintiff's theory of restitution therefore stems from

Defendant's liability-creating actions.

It is possible to recover a full refund on this theory, as Plaintiff seeks, if "a product

is shown to be worthless," or has "only *de minimis* value."  *Lambert,* 870 F.3d at 1174,

1183.  Defendant disputes that a full refund recovery is appropriate in a case such as this,

where the consumer was able to use the product.  This argument is unavailing because "the economic harm—the loss of real dollars from a consumer's pocket—is" not erased even if "a court might objectively view the products as functionally equivalent." *Kwikset,* 51 Cal.4th at 329.  For example, "[n]onkosher meat might taste and in every respect be nutritionally identical to kosher meat, but to an observant Jew who keeps kosher, the former would be worthless." *Id.* at 330.  Consumers care how their products are produced:

> Whether a diamond is conflict free may matter to the fiancée who wishes not to think of supporting bloodshed and human rights violations each time she looks at the ring on her finger.  And whether food was harvested or a product manufactured by union workers may matter to still others.

*Kwikset,* 51 Cal.4th at 328-29.  Labor practices, and child labor in particular, is one of the "key issues" for concern in Defendant's industry (Pl.'s Ex. 29 at 731) because of strong consumer feelings about it--a fact of which Defendant was acutely aware (*see* Pl. Ex. 13).  Accordingly, Plaintiff can assert a full refund theory of recovery.

Next, Plaintiff needs to show that the trier of fact could calculate or sufficiently approximate the damage amount and that her damages model is supportable on evidence that could be introduced at trial.  The measure of restitution is the difference between what the plaintiff paid and the value of what the plaintiff received.  *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009).  Full refund "may be calculated by multiplying the average retail price by the number of units sold" during the relevant time, *Lambert,* 870 F.3d at 1174-75, as well as by other formulas that approximate damages for the class as a whole, *see id.* at 1183 & n.9.  That the resulting class damages are an approximation does not present a problem under the UCL and CLRA, which are "particularly forgiving" because "California law requires only that some reasonable basis of computation of damages be used, and the damages may by computed even if the result is an approximation." *Id.* at 1183.  Therefore, "[u]nder California law, ... uncertain damages should not prevent class certification." *Id.*

Plaintiff claims the products are worthless or at best have *de minimis* value because they were produced through abhorrent practices of child slave labor and deforestation. Defendant disputes that the products are in fact worthless and offers Dr. Kivetz' consumer survey. Whether the products are worthless or have *de minimis* value is a merits issue not decided at class certification. *See Lambert,* 870 F.3d at 1184 ("Whether [Plaintiff] could prove damages to a reasonable certainty on the basis of [her] full refund model is a question of fact that should be decided at trial."). The calculation of class members' individual damages alone cannot defeat class certification. *Leyva,* 716 F.3d at 513.

The Court finds that the questions whether a reasonable consumer was likely to be deceived by the Sustainability Representations and whether the representations were material are susceptible to common proof on behalf of all class members. Plaintiff's full refund restitution theory stems from Plaintiff's theory of deception. If Plaintiff prevails on the merits, calculation of the refund is possible on a classwide basis. Accordingly, the common issues predominate over individual ones.

> b.   Superiority

To meet her burden under Rule 23(b)(3), Plaintiff must show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ, Proc. 23(b)(3). Relevant to the inquiry are matters such as "the class members' interests in individually controlling the prosecution or defense of separate actions; [¶] the extent and nature of any litigation concerning the controversy already begun by or against class members; [¶] the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and [¶] the likely difficulties in managing a class action." *Id.*

"Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation. A class action is the superior method for managing litigation if no realistic alternative exists." *Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir. 1996).

In consumer fraud cases such as this, where the individual monetary recovery of putative class members is small, "class certification may be the only feasible means for them to adjudicate their claims." *Leyva,* 716 F.3d at 515. Given the small amount of each class member's economic interest, concentrating claims in one action is desirable and it is unlikely that the class members would have an interest in individually controlling the prosecution of their individual claims. Neither party has noted any related litigation already pending or any likely difficulties in managing if a class action is certified here. Based on the discussion of commonality and predominance above, the Court has no reason to foresee difficulties. Accordingly, the Court finds that a class action is superior to other available methods of adjudicating this controversy. Defendant does not contend to the contrary.

### 3.    Rule 23(b)(2) Injunctive Relief Class

In addition to the Refund Class, Plaintiff moves to certify the Injunctive Relief Class under Rule 23(b)(2). Rule 23(b)(2) requires the plaintiff to show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" This requirement is met only when the plaintiff seeks a single injunction or declaratory judgment that would provide relief to each member of the class. *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014). Rule 23(b)(2) inquiry "does not require an examination of the viability or bases of the class members' claims for relief, does not require that the issues common to the class satisfy a Rule 23(b)(3)-like predominance test, and does not require a finding that all members of the class have suffered identical injuries." *Id.*

As discussed above, all class members were subject to the Sustainability Representations. The requested injunction, to remove the Sustainability Representations from product labels unless Defendant can trace the cocoa to assure compliance, would provide relief to each class member equally.

/ / / / /

Defendant argues that the Injunctive Relief Class should not be certified because Plaintiff as class representative lacks Article III standing to request injunctive relief and cannot meet Rule 23(a) commonality and typicality prerequisites. These contentions have been rejected in Sections A.2., B.1.b., and B.2.a. above. Accordingly, Plaintiff has met the burden to certify the Injunctive Relief Class.

### C.   Motion to Strike

Defendant filed a motion to strike expert declarations Plaintiff filed with her reply in support of class certification. Defendant argues that the declarations should be stricken because the expert opinions they contain were not timely disclosed and, alternatively, are unreliable and irrelevant under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993).

Plaintiff introduced these expert opinions in support of her class certification motion and has not offered them for any other purpose. Because they were offered for the first time in reply, they were not considered in the decision on Plaintiff's class certification motion. Accordingly, Defendant's motion to strike is denied as moot.

## III.   CONCLUSION

For the foregoing reasons it is ordered as follows:

1.   Plaintiff's motion for class certification is granted.

2.   The Court certifies a class of California consumers pursuant to Rule 23(a) and (b)(3) to recover monetary relief. The class is defined as follows:

All persons who purchased at least one of the following Nestlé Products during the following time periods:

(i)   Semisweet Morsels (12 or 72 oz) from 11/21/18 to present;

(ii)   Mini Semisweet Morsels (10 or 20 oz) from 10/17/17 to present;

(iii)   Dark Chocolate Morsels (10 or 20 oz) from 5/4/15 to present;

(iv)   Milk Chocolate Morsels (11.5 or 23 oz) from 4/19/15 to present;

(v)   Mini Marshmallows Hot Cocoa (6 Pack or 8 Pack) or Rich Milk Chocolate Hot Cocoa (6 Pack, 8 Pack, or 27.7 oz) from 12/14/17 to present;

(vi)   Nesquik Powder 16 oz from 7/6/15 to 4/27/20;

/ / / / /

25

(vii)   Nesquik Powder (9.3 or 41.9 oz) from 5/3/15 to 12/12/17;

(viii)  Nesquik Powder 18.7 oz from 4/7/17 to present.

The Court also certifies a class of California consumers pursuant to Rule 23(a) and (b)(2) for injunctive relief, defined as follows:

> All persons who purchased at least one Nestlé Product[10] labeled with the words "sustainably sourced," "responsibly sourced," or uses "sustainably harvested cocoa beans," "improve[s] the lives of cocoa farmers," or "better lives" and that has "Nestlé Cocoa Plan," "Rainforest Alliance" and/or "Utz" logos, during the period from April 19, 2015, to the present.

3.    Plaintiff Marie Falcone is appointed class representative for the certified classes.

4.    Plaintiff's counsel George V. Granade, Helen I. Zeldes, Joshua A. Fields, and Aya Dardari are appointed class counsel to represent the certified classes in this action.

5.    Defendant's motion to strike is denied.

**IT IS SO ORDERED.**

Dated:  September 25, 2024

Hon. M. James Lorenz
United States District Judge

---

10      The reference to "Nestlé Products" is to the products listed in the definition of the monetary relief class.

3:19-cv-723-L-DEB